DERRICK YAZZIE,

      Plaintiff,

v.                                           No. 16-cv-00472 JAP

SETH FEZATTE, and
WERNER ENTERPRISES, INC.

      Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Derrick Yazzie (Plaintiff) filed suit against Defendants Seth Fezatte and Werner Enterprises, Inc. (collectively, Defendants) seeking damages for personal injury he claims resulted from Defendants' alleged negligence and negligence *per se* in the operation of a semi-tractor trailer which struck Plaintiff on Interstate 40 in New Mexico on November 22, 2013.[1] On September 11, 2017, Defendants filed a motion to exclude opinions of Plaintiff's proposed transportation safety expert.[2] The motion has been fully briefed.[3] After careful consideration of the pertinent law, briefing and exhibits, the Court will grant in part Defendants' Motion to exclude certain opinions of Shawn Wayne Miller, but will reserve ruling on Defendant's Motion with regards to the admissibility of Mr. Miller's opinions related to Defendant Fezatte's training and adherence to the Federal Motor Carrier Safety Regulations for operation of a commercial motor vehicle in certain weather conditions until a *Daubert* hearing is held. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

---

[1] *See* PLAINTIFF'S FIRST AMENDED COMPLAINT (Complaint) (Doc. 7).
[2] *See* SETH FEZATTE AND WERNER ENTERPRISES, INC.'S OPPOSED MOTION TO EXCLUDE SHAWN WAYNE MILLER'S PURPORTED "EXPERT" OPINIONS (Motion) (Doc. 68).
[3] *See* PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SETH FEZATTE AND WERNER ENTERPRISES, INC.'S OPPOSED MOTION TO EXCLUDE SHAWN WAYNE MILLER'S EXPERT OPINIONS (Response) (Doc. 79); SETH FEZATTE AND WERNER ENTERPRISES, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE MILLER'S OPINIONS (Reply) (Doc. 84).

## I.    BACKGROUND

Plaintiff alleges that he suffered substantial personal injury arising from an accident that occurred on November 22, 2013 in New Mexico as a result of Defendants' acts and omissions in the operation of a commercial motor vehicle.  The factual background of these claims is set forth in the Court's Memorandum Opinion and Order granting in part and denying in part summary judgment (Doc. 102), and the Court will not repeat it here. Plaintiff retained transportation safety expert Shawn Wayne Miller (Mr. Miller) to offer opinions pertaining to federal regulations and general practices in the commercial trucking industry. Specifically, Plaintiff has offered Mr. Miller to render his opinions regarding Defendants' liability including "Defendants' violations of the Federal Motor Carrier Safety Regulations (FMCSR) and the various acts, omissions, and/or deficiencies of the Defendants that were proximate causes of Plaintiff's injuries and damages[.]" *See* Pl. Rule 26 Designation of Expert Witnesses, Ex. 1 to Resp., at 22-24 (Doc. 79-1).

Defendants do not argue that Mr. Miller is unqualified to testify about Federal Motor Carrier Safety Regulations or safety practices in the commercial trucking industry. Rather, Defendants argue that Mr. Miller should be precluded from testifying at trial because his opinions are irrelevant, lack foundation, are outside the realm of Mr. Miller's expertise, or do not provide technical information that would be helpful to the trier of fact. Mot. at 1-2.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  A witness qualified as an expert "by knowledge, skill, experience, training, or education may testify" if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 imposes an obligation on a district court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The United States Supreme Court has stated that "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592). "The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact." *U.S. v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993).

## III.    DISCUSSION

### 1.  <u>Mr. Miller's Testimony Regarding Defendant Fezatte's Level of Fatigue</u>

Defendants first argue that Mr. Miller's opinions regarding Defendant Fezatte's level of fatigue are speculative and lack foundation, and that relatedly Mr. Miller is unqualified to offer opinions on the circadian rhythm. Mot. at 7-10. Plaintiff concedes that Mr. Miller is not holding himself out as an expert on the science behind circadian rhythms, but argues that through Mr. Miller's experience, training and education he has become knowledgeable about studies performed in the trucking industry regarding the effect disruption of circadian rhythm can have on a truck driver. Resp. at 6-7. Plaintiff further contends that Mr. Miller applied his expertise to the evidence in this case to arrive at the opinion that Defendant Fezatte was fatigued at the time of the accident. Resp. at 8-9.

In his report, Mr. Miller opines that Defendant Fezatte was "most likely under the effects of sleep deprivation" and "zoned" at the time of the accident, a side effect of driving during the early morning hours which disrupts circadian rhythm. *See* Wayne Miller Expert Opinion, Ex. D

3

to Mot. at 5 (Doc. 68-4). To highlight this statement, Mr. Miller includes a circadian rhythm chart and notes that "[s]tudies have shown it takes years for a body to readjust after a normal circadian rhythm is disrupted" particularly in the trucking industry. *Id.* at 6. Mr. Miller does not cite to any of these articles, nor does he explain the relevance of any such studies to the facts of this case, particularly absent evidence regarding Defendant Fezatte's sleeping patterns immediately prior to the accident or, for example, evidence that Defendant Fezatte had been driving beyond the number of hours permitted by regulation or failed to take required breaks. When pressed to explain the foundation for his opinion that Defendant Fezatte was "under the effects of sleep deprivation," Mr. Miller responded, "Well, he hit Derrick Yazzie.  That's quite a bit of proof right there." Miller Dep., Ex. B to Mot. at 118:3-7 (Doc. 68-2).  The Court disagrees, and finds that Mr. Miller's opinions on Defendant Fezatte's level of fatigue at the time of the accident lack proper foundation and are purely speculative. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) ("It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate.").

Moreover, an expert opinion is unnecessary for the trier of fact to determine whether Defendant Fezatte was fatigued at the time of the accident. In *Tom v. S.B. Inc.*, the district court excluded a trucking expert's "fatigue opinions" (that the diver was fatigued at the time of the accident and that such fatigue was a cause of the accident), concluding such opinions were "not based upon scientific, technical or specialized knowledge." No. Civ. 10-1257 (D. N.M. Mar. 22, 2013) 2013 WL 3179108 at *4. Relying on the reasoning in *Vance v. Midwest Coast Transport*, No. 01-1422 WEB, 2004 WL 3486464 (D. Kan. Jan. 2, 2004), the district court concluded "that attention, perception, and decision-making are 'within the normal life experiences of the jury.'" *Id.* (quoting *Vance*, 2004 WL 3486464 at *4 (excluding expert's opinions on the existence and

effects of driver fatigue, concluding that "[t]he effects of fatigue on attention, perception, decision making, and motivation are within the normal life experiences of the jury, and [the expert's opinions were] not of the type of specialized knowledge contemplated by Rule 702")). Because Mr. Miller's fatigue opinions are speculative and do not constitute specialized knowledge that will assist the trier of fact under Rule 702, the Court will exclude these opinions. Mr. Miller's related opinion that Defendant Fezatte would be enticed to run loads while fatigued to recoup out of pocket training costs will also be excluded. Miller Expert Opinion at 4 (Doc. 68-4); Miller Dep. 83:3-85:16 (Doc. 68-2). Mr. Miller provided no foundation for this opinion and it is purely speculative.

### 2. **Mr. Miller's Opinions Regarding Distracted Driving**

Defendants also seek to exclude Mr. Miller's opinions concluding that Defendant Fezatte engaged in distracted driving. Specifically, Defendants argue that Mr. Miller's reliance on Qualcomm[4] messages sent to Werner on November 22, 2013 around 7:24 p.m. Mountain Standard Time (MST) and 10:59 p.m. MST as evidence of distracted driving should be excluded as irrelevant because they are distant in time from the accident. Mot. at 11. Defendants also claim that Mr. Miller's opinion that a driver who witnesses another driver at some distance in front of him "swerve or take another type of evasive action" would naturally be more alert and follow suit is inadmissible because it does not constitute specialized knowledge. Mot. at 12. Plaintiff responds that the contested opinions are directly relevant to the cause of the accident and Defendant Fezatte's alleged failure to take evasive action or see Plaintiff. Resp. at 9.

The collision at issue in this case occurred at approximately 2:36 a.m. MST on November 22, 2013. According to Mr. Miller's report, the Qualcomm messages Mr. Miller relies on to

---

[4] Qualcomm is a truck-based networking system that allows communication between a driver and the trucking company. Fezatte Depo., Ex. G to Def. Mot. at 60:5-12 (Doc. 68-7).

support his opinion that Defendant Fezatte was distracted in the moments immediately preceding the accident were sent at 7:24 p.m. MST and 10:59 p.m. MST on November 21, 2013, seven hours and three and one half hours respectively before the accident occurred. *See* Miller Expert Opinion at 4 (Doc. 68-4). Plaintiff claims there is evidence that the logs are incorrect, referring both to Mr. Miller's report and deposition in which Mr. Miller refers to Qualcomm messages sent and received during a four minute period while Defendant Fezatte was logged into the sleeper berth. Resp. at 9. But Plaintiff presents no evidence that the time stamps on the Qualcomm messages themselves are inaccurate. Proposed expert opinion testimony must still withstand the relevancy test under Federal Rule of Evidence 401. Because the Qualcomm messages at issue are so attenuated in time from the time of the accident, any opinion rendered about alleged distraction as a result of these messages is irrelevant and therefore inadmissible. Further, as with testimony regarding fatigue or alertness, the question of whether Defendant Fezatte was distracted or should have reacted a particular way to any observed defensive action taken by another driver ahead of him falls within the normal life experiences of the jury and does not constitute specialized knowledge. *See Tom v. S.B. Inc.*, No. Civ. 10-1257 (D. N.M. Mar. 22, 2013) at *4. Mr. Miller's opinions as to Defendant Fezatte's alleged distracted driving are inadmissible.

3. **Mr. Miller's Opinions Related to the "Spike" in Overall Crashes for Werner Enterprises, Inc.'s Power Units**

Defendants argue that Mr. Miller should not be allowed to testify regarding what he refers to in his report as a "spike" in crashes involving Werner vehicles following an increase in the number of Werner power units, and the conclusion that this "spike" was the result of an inadequate safety management process. Mot. at 12-15; Miller Expert Opinion at 2 (Doc. 68-4).

6

Defendants claim Mr. Miller mischaracterizes the data and that the information is otherwise irrelevant. Mot. at 13. Plaintiff rejects these arguments. Resp. at 10-11.

The Court will exclude Mr. Miller's opinions regarding the "spike" in crashes on the ground of lack of relevancy. The graph included in Mr. Miller's report indicates an increase of nine reportable crashes between the months of April 2013 and June 2013. Miller Expert Opinion at 2 (Doc. 68-4). The accident at issue occurred in November 2013, at which time the number of reportable crashes was exactly the same as it was in April 2013 before the "spike" Mr. Miller references. Miller Expert Opinion at 2 (Doc. 68-2). An increase of nine reportable crashes in a three month period is not an appreciable increase. Regardless, the Court finds that even if the number of reported crashes in June 2013 could be considered an appreciable "spike," this "spike" is too remote in time from the date of the accident to be relevant here. Because only relevant evidence is admissible, Fed. R. Evid. 402, the Court will exclude Mr. Miller's testimony pertaining to a "spike" in crashes.

### 4. Mr. Miller's Opinions Regarding Pre- and Post-Incident Drug and Alcohol Testing

Defendants ask the Court to exclude any opinions Mr. Miller might offer about a random drug screen conducted on Defendant Fezatte in April of 2013, as well as opinions that a drug and alcohol screening should have been conducted under the Federal Motor Carrier Safety Regulations immediately after the accident. Mot. at 23-24. Plaintiff contends that the April 2013 drug screen was improperly administered and, combined with an anonymous report in Defendant Fezatte's employee file that he had been using marijuana, is relevant to Defendant Fezatte's qualifications and ability to safely operate a commercial vehicle. Resp. at 18. Plaintiff further asserts that a post-incident drug and alcohol test should have been performed in accordance with federal regulation. Resp. at 18-19.

The Court first addresses Mr. Miller's opinions regarding how improper administration of a drug and alcohol screening on Defendant Fezatte seven months prior to the accident could have caused or contributed to cause the accident. The Court agrees with Plaintiff that any evidence Defendant Fezatte may have been under the influence of drugs or alcohol at the time of the accident would certainly be relevant to his ability to operate a commercial vehicle. However, the Court finds that Mr. Miller's opinion that had the April 2013 drug screen been properly administered, Defendant Fezatte "would have had a positive, and he wouldn't have been at Werner," Miller Dep. at 166:3-8 (Doc. 68-2), is entirely speculative. Mr. Miller appears to base his conclusion in part on the Complaint and Incident Report Plaintiff references in his brief. Miller Dep. at 166:21-25 (Doc. 68-2). Werner received the anonymous complaint on January 12, 2013, referencing an alleged incident of drug use by Defendant Fezatte that occurred more than six months earlier in May or June of 2012 and almost a year and a half before the accident. *See* Complaint and Incident Report, Ex. 6 to Resp. (Doc. 79-6). To form an opinion that Defendant Fezatte would have tested positive for drugs had the April 2013 test been properly administered, absent positive findings on other random drug tests performed, and based on an anonymous complaint for an alleged incident that occurred over a year prior to the accident is speculative and the Court will exclude that opinion. *See* Drug Tests, Ex.t 4 to Reply (Doc. 84-4).

The parties' argument concerning Mr. Miller's opinion that a post-incident drug and alcohol test should have been administered to Defendant Fezatte centers on application of 49 C.F.R. § 382.303 to the facts of this case. The regulation requires that an employer test its commercial vehicle drivers for alcohol and controlled substances as soon as possible following the incident if certain conditions exist. *See* 49 C.F.R. § 382.303. These include, in relevant part, incidents where a driver receives a citation for a moving traffic violation if the accident: (1)

involved bodily injury to a person requiring immediate medical attention away from the scene of the accident or, (2) one or more vehicles involved in the incident incurred disabling damage requiring the vehicle to be towed. *See* 49 C.F.R. § 382.303 (a)-(b). The parties do not dispute that the accident involved bodily injury to Plaintiff who had to be transported for medical treatment. Rather, the parties dispute whether Defendant Fezatte was issued a "citation," thereby triggering mandatory post-incident drug and alcohol testing. Mr. Miller did not see a citation, but testified that there was reference in the Holbrook Police Report to a "fix-it ticket" for the broken headlight. Miller Dep., Ex. 2 to Resp. at 152:5-9 (Doc. 79-2). When pressed on the matter, Mr. Miller stated that he does not know whether Defendant Fezatte was cited, Miller Dep. at 152:13-16 (Doc. 79-2), and confirmed that absent a citation "there would be no requirement to have a test done," Miller Dep., Ex. 1 to Reply, Miller Dep. at 164:5-9 (Doc. 84-1). The Holbrook Police Report indicates that Officer Koon "issued Seth [Fezatte] his written equipment repair order" rather than a citation. *See* Holbrook Police Report, Ex. 6 to Def. Mot. for Summ. J., at 4 (Doc. 69-6). Absent evidence that Defendant Fezatte was issued a citation, Mr. Miller will not be allowed to testify that Defendant Werner violated a federal regulation by failing to administer a post-accident drug and controlled substances test.

   5. **Mr. Miller's Opinions on How the Accident Occurred**

Plaintiff argues that Mr. Miller is entitled to rely on evidence in the record, including the police report, to offer opinions regarding how the accident occurred including characterizing it as "hit-and-run where Defendant Fezatte knowingly left the scene of an accident." Resp. at 16-18. Defendants in turn argue that Mr. Miller's opinions about how the accident occurred are not based on expertise and should be excluded. Mot. at 19.

As a preliminary matter, Plaintiff is not offering Mr. Miller as an expert in accident reconstruction and Mr. Miller confirmed that he did not perform an accident reconstruction in this case. Miller Dep. 34:20-22 (Doc. 68-2). Accordingly, any opinions that attempt to reconstruct how the November 22, 2013 accident occurred are beyond Mr. Miller's purview. More concerning to the Court, however, are Mr. Miller's conclusions regarding how the accident occurred that are based on his personal assessment of Defendant Fezatte's credibility. In his report, Mr. Miller suggests that Defendant Fezatte knew he hit a human being yet chose to drive off leaving Plaintiff "injured and mangled" along the roadside, and then "attempted to mislead the investigating officers," and "conceal" facts. Miller Expert Opinion at 7, 14 (Doc. 68-4). In *United States v. Toledo*, the Tenth Circuit Court of Appeals made it clear that "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony." 985 F.2d 1462, 1470 (10th Cir. 1993). There are several reasons for this prohibition, including that expert testimony on witness credibility "usurps a critical function of the jury," and "is not helpful to the jury, which can make its own determination of credibility." *Id.* It is the jury, and not Mr. Miller, who will review the evidence, assess witness credibility, and reach a conclusion about what occurred in the early morning hours of November 22, 2013. The Court will exclude Mr. Miller's opinions about how the accident occurred as well as any credibility determination as to Defendant Fezatte.

### 6. Mr. Miller's Opinion on Duty

In his expert report, Mr. Miller opines that both Defendants owed a duty to Plaintiff. *See* Miller Expert Opinion at 14 (Doc. 68-4). Defendants contend, and the Court agrees, that whether a particular defendant owes a duty is a question of law for the Court to decide. *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 186. Questions of law are "not subject to conclusive proof by expert testimony." *Romero v. City of Santa Fe*. 2006-NMCA-055, ¶ 26, 134

P.3d 131, 138. The Court will exclude any opinions Mr. Miller may have regarding whether Defendants owed a duty to Plaintiff.

   7. **<u>Mr. Miller's Opinions on Training and Compliance with the Federal Motor Carrier Safety Regulations</u>**

Mr. Miller is critical of a gap in time between when Defendant Fezatte completed his truck driver training course and when he attended Werner's driver orientation, as well as the qualifications of the trainers and the appropriateness of Defendant Fezatte's final evaluation. *See* Miller Expert Opinion at 3-4 (Doc. 68-4). Defendants argue that Mr. Miller's opinions are speculative, irrelevant, based only on "common sense" and do not involve any specialized knowledge. Mot. at 16. Plaintiff in turn contends that Mr. Miller relied on his knowledge, skill, experience, training and education to proffer his opinions regarding Defendant Fezatte's training, and that such information is relevant to Defendant Fezatte's ability to operate a commercial vehicle. Resp. at 13-16.

Mr. Miller also opined that Defendant Fezatte violated 49 C.F.R. § 392.14 related to actions a commercial truck driver must take in hazardous conditions. *See* Miller Expert Opinion at 6 (Doc. 68-4). Defendants state that Mr. Miller's opinions regarding this issue are misleading and based on mischaracterization of Defendant Fezatte's testimony. Mot. at 24-25. Plaintiff contends that Mr. Miller relied on Defendant Fezatte's sworn deposition statements regarding weather conditions in conjunction with expertise in federal regulation to formulate his opinion that Defendant Fezatte failed to adhere to the regulation. Resp. at 13-16.

The Court will reserve ruling on the admissibility of Mr. Miller's opinions related to Defendant Fezatte's driver training and the appropriateness of Defendant Fezatte's actions for the weather conditions at the time of the accident in relation to industry standard and the Federal Motor Carrier Safety Regulations until a *Daubert* Hearing is held.

**IT IS THEREFORE ORDERED THAT**:

1. SETH FEZATTE AND WERNER ENTERPRISES, INC.'S OPPOSED MOTION TO EXCLUDE SHAWN WAYNE MILLER'S PURPORTED "EXPERT" OPINIONS (Doc. 68) is GRANTED in part to the extent that the Court will exclude Mr. Miller's opinions on fatigue, distracted driving, any purported "spike" in Werner power units crash data, pre- and post-incident drug and alcohol testing of Defendant Fezatte, duty, and how the accident occurred;

2. The Court will RESERVE ruling on Defendant's MOTION with regards to the admissibility of Mr. Miller's opinions related to Defendant Fezatte's training and adherence to the Federal Motor Carrier Safety Regulations for operation of a commercial motor vehicle in certain weather conditions; and

3. The Court will hold a *Daubert* hearing regarding the admissibility of the remaining opinions on **March 20, 2018 at 10:00 a.m.** at the United States Courthouse, 421 Gold Ave. SW., Sixth Floor, Albuquerque, New Mexico. The Court will not reconsider the admissibility of Mr. Miller's opinions excluded in this Memorandum Opinion and Order at the *Daubert* hearing.


_____
SENIOR UNITED STATES DISTRICT JUDGE