UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DERRICK YAZZIE,

    Plaintiff,

v.                                                Civ. No. 16-472 JAP/KRS

SETH FEZATTE and
WERNER ENTERPRISES, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On April 14, 2016, Plaintiff filed a civil suit in New Mexico state court against Defendants, alleging the following claims: 1) negligence against Defendant Fezatte directly and against Defendant Werner under a theory of respondeat superior; 2) negligence per se against both Defendants; and 3) negligent training, hiring, supervision, retention, and entrustment against Defendant Werner. Plaintiff also seeks punitive damages against both Defendants. On May 24, 2016, Defendants timely removed to federal court based on diversity jurisdiction.[1]

In the years since, the punitive damages skirmish has predominated the litigation. After the Court initially ruled against Plaintiff on his punitive damage claims, he filed a motion asking the Court to reconsider.[2] But before the Court could rule on that motion, on March 20, 2018, Defendant Fezatte filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the

---

[1] *See* SUBJECT TO ANY AND ALL FEDERAL RULE OF CIVIL PROCEDURE 12(B) DEFENSES, SETH FEZATTE AND WERNER ENTERPRISES, INC.'S NOTICE OF REMOVAL (Doc. 1). On June 21, 2016, Plaintiff amended the Complaint. *See* AMENDED COMPLAINT (Doc. 7).
[2] *See* PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S PUNITIVE DAMAGES CLAIM (DOC 102) (Doc. 108); *see also* SETH FEZATTE AND WERNER ENTERPRISES, INC.'S RESPONSE TO PLAINTIFF'S OPPOSED MOTION TO RECONSIDER THE COURT'S ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S PUNITIVE DAMAGES CLAIM (Doc. 115); PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S PUNITIVE DAMAGES CLAIM (DOC. 102) (Doc. 118).

Southern District of Ohio.[3]  On April 4, 2018, the Court stayed the proceedings in this case and, on June 15, 2018, the bankruptcy court granted Plaintiff relief from that automatic stay.[4]

On June 20, 2018, the Court granted in part and denied in part Plaintiff's motion to reconsider and directed the parties to prepare additional briefing on Plaintiff's punitive damage claims.[5]  On July 2, 2018, Plaintiff filed a supplemental brief on punitive damages.[6]  Attached to that brief was an affidavit from Kimberly Ramay, a former coworker of Defendant Fezatte. Defendants moved to strike Ms. Ramay's affidavit.[7]  Defendants attached to their motion a competing affidavit from Defendant Fezatte, which "continued to deny fault in this civil proceeding" and denied each allegation in Ms. Ramay's affidavit.  On November 14, 2018, the Court held a hearing on the motion to strike.  At the end of the hearing, the Court denied the motion and reopened discovery for the limited purpose of deposing Ms. Ramay, Defendant Fezatte, and any other potential witnesses to the events Ms. Ramay described.[8]  Five days after the hearing, on November 19, 2018, the McKinley County District Attorney filed a criminal complaint against Defendant Fezatte.[9]  The complaint charged Defendant Fezatte with two counts: (1) Great Bodily Harm by a Motor Vehicle; and (2) Accident Involving Death or Personal Injuries.

---

[3] *See* NOTICE OF SUGGESTION OF BANKRUPTCY (Doc. 116).
[4] *See* ORDER GRANTING DERRICK YAZZIE AND WERNER ENTERPRISES, INC'S JOINT MOTION TO STAY CASE PENDING RELIEF FROM BANKRUPTCY COURT (Doc. 122); THE PARTIES' JOINT NOTICE OF ORDER GRANTING DERRICK YAZZIE'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 USC § 362 (Doc. 125).
[5] *See* ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO RECONSIDER (Doc. 124).
[6] *See* PLAINTIFF'S SUPPLEMENTAL BRIEF ON WHETHER MATERIAL ISSUES OF FACT EXIST AS TO DEFENDANTS' CONDUCT AND MENTAL STATE TO SUPPORT PLAINTIFF'S PUNITIVE DAMAGES CLAIM (Doc. 127).
[7] *See* SETH FEZATTE AND WERNER ENTERPRISES, INC.'S MOTION TO STRIKE KIMBERLY RAMAY'S AFFIDAVIT (Doc. 129).
[8] *See* ORDER DENYING MOTION TO STRIKE (Doc. 144).
[9] *See* CRIMINAL COMPLAINT (Doc 139-3).

In response to these charges, Defendants moved to stay the proceedings in this case.[10] On April 25, 2019, the Court granted Defendants' request in part and stayed the civil trial until resolution of the criminal case but allowed limited discovery to continue on the punitive damage claims.[11] On June 1, 2020, the parties notified the Court that they had completed the limited discovery, that the criminal matter against Defendant Fezatte had concluded, and that Defendants were ready to re-brief their motion for summary judgment on Plaintiff's punitive damage claims.[12] On June 23, 2020, the Court held a status conference and set a briefing schedule.[13]

In accordance with that schedule, on July 20, 2020, Defendant Werner Enterprises, Inc., filed a PARTIAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM (Doc. 154) (Werner Motion).  Likewise, on August 10, 2020, Defendant Seth Fezatte filed a PARTIAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM (Doc. 157) (Fezatte Motion).  The Motions are fully briefed.[14] The Court will grant the Werner Motion and will deny the Fezatte Motion for the following reasons.

---

[10] *See* SETH FEZATTE AND WERNER ENTERPRISES, INC.'S OPPOSED MOTION TO STAY ALL CIVIL PROCEEDINGS PENDING ADJUDICATION OF FELONY CRIMINAL CHARGES AGAINST SETH FEZATTE (Doc. 139).
[11] *See* MEMORANDUM ORDER AND OPINION (Doc. 145).
[12] *See* AMENDED REPORT OF CASE STATUS BY COUNSEL OF RECORD IN THE REFERENCED MATTER (Doc. 151).
[13] *See* Clerk's Minutes for Status conference held on 6/23/2020 (Doc. 153).
[14] *See* PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT WERNER ENTERPRISES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM (DOC.154) (Doc. 156) (Werner Response); WERNER ENTERPRISES, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO WERNER ENTERPRISES, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM AND RESPONSE TO PLAINTIFF'S UNDISPUTED MATERIAL FACTS (Doc.158) (Werner Reply); *see also* PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SETH FEZATTE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM (DOC.157) (Doc. 160) (Fezatte Response); SETH FEZATTE'S REPLY TO PLAINTIFF'S RESPONSE TO SETH FEZATTE'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM AND RESPONSE TO PLAINTIFF'S UNDISPUTED MATERIAL FACTS (Doc. 161) (Fezatte Reply).

I. **BACKGROUND**

    A. **Defendant Werner's Hiring, Training, and Supervision of Defendant Fezatte**[15]

Defendant Werner is a national trucking company with a fleet of approximately 7,300 commercial trucks operated by approximately 9,500 commercial truck drivers. Werner Mot., Ex. A at 18:3–7. Prior to employment, Defendant Werner requires that all prospective drivers graduate from a truck driving school and possess a commercial driver's license (CDL). *Id.* at 21:1–8, 22:6–15. All prospective drivers must also submit to a drug screening, *id.* at 22:10–12, 23:8–10, pass a prior employment verification process, *id.* at 23:5–6, complete a physical performed by a third party, *id.* at 92:4–5, and attend a two-day orientation, which consists of: (1) pretrip inspection training; (2) computer based training; (3) driver's hours of service training; (4) hands-on exercises with live Qualcomm units; (5) map reading; (6) truck coupling/uncoupling; (7) Federal Motor Carrier Safety Administration Compliance, Safety, and Accountability enforcement program; (8) accident prevention and injury; and (10) hazard awareness. *Id.* at 23:8–18.

Additionally, Defendant Werner requires newly licensed drivers like Defendant Fezatte to complete two months of over the road training with one of its professional driver trainers. *Id.* at 22:13–15. Defendant Werner also requires that all drivers undergo quarterly safety trainings. *Id.* at 48:23–49:4. Drivers also have access to driver simulation trainings and accident prevention trainings. *Id.*

---

[15] Under Rule 56 of the Federal Rules of Civil Procedure, a party attempting to controvert a fact must do so by "citing to particular parts of materials in the record." Fed. R. Civ. P. 15(c)(1)(A). This District's local rules also require that, in a memorandum opposing summary judgment, "[e]ach fact in dispute must be numbered, must refer with particularity by paragraph, to those portions of the record upon which the non-movant relies and must state the number of the movant's fact that is disputed." D.N.M.LR-Civ. 56(b). Plaintiff disputes Defendant Werner's facts only by stating that they do not "establish the absence of a genuine dispute" and by citing to Federal Rule of Civil Procedure 56(c)(1)(B). As a result, the Court deems Defendant Werner's facts undisputed.

Defendant Fezatte was qualified to work for Defendant Werner; he graduated from a truck driving school and possessed a CDL. *Id*., Ex. B at 10:22–12:2, 15:2–7, 20:2. Defendant Fezatte completed the two-day orientation and a three-month over the road training period with a driver trainer (approximately one month more than the two-month minimum requirement), which amounted to approximately 280 hours of on-duty training. *Id.* at 25:1–15. Prior to the incident underlying this litigation, Defendant Werner investigated Defendant Fezatte for two possible infractions. In June 2012, Defendant Fezatte was cited for speeding, and Defendant Werner required that he complete speed management training. *Id*. at 55:15–56:16; Ex. A at 107:11–108:2. In January 2013, Defendant Werner received a complaint that Defendant Fezatte smoked marijuana. *Id*., Ex. A at 103:14–18. In response, Defendant Werner required that Defendant Fezatte submit to a drug test, which he passed. *Id*. at 103:14–25; Ex. B at 51:8–13.

### B. The Accident[16]

On November 22, 2013, Plaintiff Derrick Yazzie was walking westbound near mile-marker 18 on Interstate 40 near Gallup, New Mexico, when he was struck by a commercial vehicle owned by Defendant Werner and operated by Defendant Fezatte. Complaint at ¶ 5; Docs. 69 at ¶¶ 1–2; 80 at ¶¶ 3–4. Prior to the collision, on November 21, 2013, Defendant Fezatte had assumed driving responsibilities from his brother Jaron Fezatte around 7:00 p.m. Central Standard Time (CST) outside of Amarillo, Texas, and headed west on Interstate 40. Docs. 69 at ¶¶ 5-6; 80 at ¶ 6. Defendant Fezatte stopped for a thirty-minute mandatory Department of Transportation break seventeen miles east of Gallup, New Mexico, at 2:15 a.m. CST/1:15 a.m. Mountain Standard Time

---

[16] Several relevant, undisputed facts are set forth in this Court's MEMORANDUM OPINION AND ORDER (Doc. 102), which granted Defendants' initial request for summary judgment on Plaintiff's punitive damages claim. In accordance with Federal Rule of Civil Procedure 10(c), the parties have incorporated their undisputed fact sections from the briefing on Defendants' initial motion for summary judgment (Doc. 69). *See* Werner Reply ("Werner incorporates Mr. Fezatte's undisputed facts in Mr. Fezatte's [Motion]"); Fezatte Motion ("Mr. Fezatte incorporates the undisputed fact section included in his . . . September 11, 2017, [motion]"); Resp. Fezatte Mot. ("Plaintiff also incorporates by reference his response to Defendants' statement of facts"). The Court recites those findings here.

(MST) on November 22, 2013, and resumed driving at approximately 2:50 a.m. CST/1:50 a.m. MST. Docs. 69 at ¶¶ 7, 9; 80 at ¶ 6. Defendant Fezatte testified that as he approached Gallup, New Mexico, it was sleeting and weather conditions were "sub-optimal." Docs. 69 at ¶ 105; 69-3 at 90:18. Defendant Fezatte further testified that as he was driving westbound on Interstate 40 he felt an impact but, believing he struck a deer, continued to drive. Docs. 69 ¶¶ 3, 21; 69-3 at 95:24-96:6. Defendant Fezatte testified that he pulled over, assessed the damage to the tractor-trailer, and returned to what he believed was the location of the impact to determine whether there was anything in the road. Docs. 69 at ¶¶ 21, 23, 25-26; 69-3 at 96-97, 101-02; 80 at ¶¶ 34-38; 80-4 at 98-101. Finding nothing, he continued westbound on Interstate 40 for approximately 20 miles before he stopped at a rest stop near the New Mexico/Arizona border to contact Werner dispatch to discuss the accident. Werner Mot., Ex. B at 97:22–24.[17]

Around this time, Ruben Cosgrove was also traveling westbound on Interstate 40 operating another commercial vehicle ahead of Defendant Fezatte in the right lane. Docs. 69 at ¶¶ 16-17; 80 at ¶ 8.[18] Mr. Cosgrove saw a male, later identified as Plaintiff, walking backwards on the roadway as though he were hitchhiking. Docs. 69 at ¶¶ 18-19; 80 at ¶ 8. Mr. Cosgrove contacted authorities reporting a pedestrian on the interstate wearing a black jacket, white t-shirt, and jeans. Docs. 69 at ¶¶ 27-28; 69-4 at 21, 26, 31, 38; 69-1; 80 at ¶ 10. In response to this call, Officer Chavo Waylon Chischilly with the Gallup Police Department was dispatched around 2:36 a.m. MST and, after seeing Plaintiff's shoe in the middle of the roadway, located Plaintiff lying face down in a muddy roadside area. Docs. 69 at ¶¶ 27, 29; 69-4 at 21, 33-34; 80 at ¶ 10.

---

[17] This fact did not appear in the Court's original findings.
[18] Defendant Fezatte objects to Plaintiff's reliance on the Gallup Police Report under Federal Rule of Evidence 702 and 801(c). *See* Fezatte Mot. at 2. The Court is puzzled by this objection. Not only did Defendants specifically rely on the Gallup Police Report in their initial motion for summary judgment, *see* Doc. 69 at ¶¶ 1, 16, 18, 27, 31, 101, Defendants incorporate into the instant motions the undisputed material fact section from Doc. 69. Thus, the Court deems Defendant Fezatte to have WAIVED his objection to the Gallup Police Report.

Officer J. Koon of the Holbrook Police Department was dispatched in response to an Attempt to Locate (ATL) a blue Werner commercial vehicle with a nonoperational front headlight as described to officers by Mr. Cosgrove. Docs. 69 at ¶ 32; 69-6 at 3. Officer Koon stopped Defendant Fezatte. Docs. 69 at ¶ 33; 69-6. Defendant Fezatte was then interviewed in Holbrook, Arizona, by Detective Victor Rodriguez from the Gallup Police Department. Docs. 69 at ¶ 39; 69-7 at 16-17.

After the accident, Defendant Werner required Defendant Fezatte to complete a virtual training assessment. Werner Mot., Ex. B at 27:4–20.[19]

### C. The Ramay Affidavit and Criminal Charges

Defendant Fezatte resigned from Werner in July 2014. Resp. Fezatte Mot., Ex. 3 at 20:9-11. Sometime after, he began working at Aaron's Rent to Own Furniture, and in January 2018, Kimberly Ramay became his co-worker. Fezatte Mot., Attach. 6 at 26:2–9.[20] Defendant Fazette and Ms. Ramay shared the same job duties, including making field visits together. *Id*. at 26:11–23. On April 3, 2018, Ms. Ramay executed an affidavit which, among other things, alleged that during a field visit with Defendant Fezatte, he stated that "he killed a person . . . but that it didn't [sic] matter because it was one less Native American. [Defendant] Fezatte [stated] that he saw the person before he hit him, and that he knew he had hit a person." *Id*., Attach. 5 at 1–2. As a result of the affidavit, Defendant was charged in the McKinley County Magistrate Court in Gallup, New Mexico, with Great Bodily Harm by Motor Vehicle and Accident Involving Death or Personal

---

[19] This fact did not appear in the Court's original findings.

[20] Defendant Fezatte commenced numbering the exhibits attached to the Fezatte Motion at 15, which continues the numbering convention Defendants utilized in their initial motion for summary judgment (Doc. 69). Under this convention, Attachment 1 correlates to exhibit 15. However, Defendant Werner does not employ this convention in the Werner Motion nor does Plaintiff in his responses. Therefore, for clarity the Court will cite to the evidence appended to the Fezatte Motion as attachments beginning with attachment 1 rather than exhibits beginning with exhibit 15.

7

Injuries. *Id*., Attach. 1. Ultimately, Defendant Fezatte pleaded guilty to a lesser offense of Careless Driving. *Id*., Attach. 2.[21]

## II.   LEGAL STANDARD

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact." *Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)). Disputes are genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and they are material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (further citation and internal quotation marks omitted). "A plaintiff 'cannot avoid summary judgment merely by presenting a scintilla of evidence to support her claim; she must proffer facts such that a reasonable jury could find in her favor.'" *Milne v. USA Cycling Inc.,* 575 F.3d 1120, 1130 (10th Cir. 2009) (quoting *Turner v. Public Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009) (further citation omitted)).

---

[21] Plaintiff objects under Federal Rule of Evidence 401 and 403 to all facts surrounding the criminal case. Plaintiff argues that, "because the legal and evidentiary standards in determining whether to seek and prosecute felony criminal charges against him for his conduct arising out of the incident are not the same as the legal and evidentiary standards presented here and so is not relevant to the issues the jury will decide in this case, or any probative value is outweighed by the dangers of misleading the jury or confusing the issues that are for the jury to decide in this case." Resp. Fezatte Mot. at 4. The Court disagrees. While the standards are indeed different, all facts relating to Defendant Fezatte's mental state regarding the November 22, 2013, accident are relevant to the punitive damages inquiry, and outweigh any prejudicial effect the evidence might have on the jury. Therefore, the Court will OVERRULE Plaintiff's objection.

"[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018). Accordingly, the Court will apply the substantive law of New Mexico.

### III.   ANALYSIS

#### A.   Werner Motion

##### 1.   *Parties' Arguments*

Defendant Werner contends that a punitive damage award is inappropriate because the undisputed facts demonstrate that it did not possess the requisite mental state meriting punishment and deterrence. Werner Mot. at 1. Specifically, Defendant Werner argues that Defendant Fezatte was not employed in a managerial capacity nor did it ratify his conduct. *Id*. at 8–10. Defendant Werner also maintains that nothing was infirm about the cumulative conduct of it or its employees such that a culpable mental state could be inferred. *Id*. at 11–13.

For his part, Plaintiff concedes that Defendant Fezatte was not acting in a managerial capacity and that Defendant Werner did not ratify Defendant Fezatte's conduct. *See* Resp. Werner Mot. at 1, 17–18. Instead, Plaintiff asserts only that Defendant Werner's cumulative actions, including that of Defendant Fezatte, establish a culpable mental state sufficient to impose punitive damages. *Id*. at 17–23.

##### 2.   *Defendant Werner did not Act with a Culpable State of Mind*

New Mexico has a "general rule that punitive damages are not imposed on an employer for the acts of an employee as a matter of simple respondeat superior." *Grassie v. Roswell Hosp. Corp.*, 258 P.3d 1075, 1086 (N.M. 2011). "Rather, there must be proof in some form of the

9

employer's own culpable state of mind and conduct." *Id*. The New Mexico Supreme Court has explained that

> [a] corporation may be held liable for punitive damages for the misconduct of its employees if: (1) corporate employees possessing managerial capacity engage in conduct warranting punitive damages; (2) the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages; or (3) under certain circumstances, the cumulative effects of the conduct of corporate employees demonstrate a culpable mental state warranting punitive damages.

*Carrillo v. Copper Sols. & Servs., LLC*, 2020 WL 1845119, at *10 (N.M. Ct. App. Mar. 10, 2020) (unpublished) (quoting *Chavarria v. Fleetwood Retail Corp.*, 143 P.3d 717, 725 (N.M. 2006)).

Given that Plaintiff concedes that the first two categories do not apply, the Court will focus on the third, whether the cumulative effects of the conduct of Defendant Werner's employees demonstrate that it acted with a culpable mental state. Unfortunately for Plaintiff, however, two New Mexico cases (and a Kentucky case) illustrate that no material fact issues exist regarding corporate culpability; therefore, Defendant Werner is entitled to judgment as a matter of law on Plaintiff's punitive damage claim against it.

In *Clay v. Ferrellgas, Inc.*, 881 P.2d 11, 14 (N.M. 1994), the New Mexico Supreme Court adopted the test that allows a court to examine the cumulative conduct of employees to determine a corporate entity's mental state. The New Mexico Supreme Court heavily relied on a decision issued by the Supreme Court of Kentucky, which awarded punitive damages against a gas company after a house exploded due to a gas leak. *Id*. at 15 (discussing *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985)). In *Horton*, the plaintiff presented evidence that a gas company's employees failed to (1) inspect a house after being notified that there was an odor of gas, (2) turn off the gas line, and (3) evacuate the house's occupants. 690 S.W.2d at 386. Moreover, evidence showed that prior to the explosion the gas company failed to establish an appropriate emergency plan regarding gas leaks—even after Kentucky's chief utility inspector

10

urged it to do so. *Id*. at 387. The *Horton* court determined that the negligence of employees, coupled with the fact that the gas company ignored repeated suggestions to revise its investigatory procedures, constituted conduct of corporate wantonness or recklessness. *Id*. at 388. The *Horton* court stressed, however, that it was not finding potential liability for punitive damages based on a single, isolated, unauthorized, and unexpected act of negligence by an employee. *Id.* at 390. In such a circumstance, a corporate entity could not be punished vicariously. *Id.*

With this guidance, the New Mexico Supreme Court determined that the "acts of the employees should be viewed cumulatively to determine the mental state of a corporation." *Ferrellgas, Inc.*, 881 P.2d at 16. In *Ferrellgas*, a vehicle converted by Ferrellgas to run on propane exploded when gas leaked from a faulty valve located inside the trunk. *Id.* at 13. The evidence, which supported an award for punitive damages, included: a corporate policy (or lack thereof) that allowed employees to be ignorant of the acts or omissions of other employees despite the fact that in all probability this ignorance would result in severe harm; Ferrellgas allowed its employees to violate state law by improperly installing equipment; and Ferrellgas authorized or participated in an employee's continuing failure to file proper inspection forms. *Id*. at 16–17 (quotations omitted). This evidence demonstrated that Ferrellgas had a "cavalier attitude toward safety regulation." *Id*. at 17. Thus, the New Mexico Supreme Court concluded that "the high risk of harm that accompanies the handling of propane gas, the negligence of [two employees] and regular violation of safety regulations by Ferrellgas amounts to corporate indifference and reckless conduct." *Id*.

In a more recent and less explosive case, the New Mexico Court of Appeals also upheld an award of punitive damages under the third category. In *Carrillo v. Copper Sols. & Servs., LLC*, 2020 WL 1845119 (N.M. Ct. App. Mar. 10, 2020), a Copper Solutions employee driving a semi-

11

truck with a flat-bed trailer rear-ended a pickup truck causing it to cross over the median, which in turn, caused a head-on collision with the plaintiff, who was driving a semi-truck in the opposite direction.  2020 WL 1845119 at *1.  The evidence demonstrated that Copper Solutions failed to comply with its internal checklist of required qualifications for new drivers.  *Id*. at *10.  This resulted in Copper Solutions failing to obtain the employee's driving records and safety performance history from his previous employers.  *Id*.  In addition, despite the employee having limited proficiency in English, Copper Solutions nonetheless conducted its entry level training and administered driving proficiency tests in English.  *Id*.  The evidence also showed that Copper Solutions' office manager and secretary failed to adequately keep the employee files and/or confirm that information was properly contained in the employee files and failed to maintain the company's Department of Transportation information.  *Id*. at *11.  The court concluded that, when considered in conjunction with the danger presented by operating a commercial vehicle, the evidence provided a sufficient basis for the jury to conclude that Copper Solutions' conduct with regard to its employee's training and supervision showed a willful and/or reckless disregard for its managerial responsibilities.  *Id*.

Unlike *Ferrellgas*, *Horton*, and *Copper Solutions*, Plaintiff's evidence falls short of the quantum necessary to infer corporate culpability.  Plaintiff simply states that "[a] jury may also conclude from the evidence Defendant Werner's subsequent failure to take action against Defendant Fezatte, and corporate indifference to Fezatte's conduct and its failure to challenge his transparently false statements as to what actually took place" is sufficient for a punitive damage award.  Resp. Fezatte Mot. 21.  However, these bare accusations are completely unsupported the evidence.  To be sure, in contrast to *Ferrellgas*, *Horton*, and *Copper Solutions*, the undisputed facts show that Defendant Werner adequately investigated and trained Defendant Fezatte before

allowing him to drive for the company. *See* Werner Mot., Ex. A, *passim*. The evidence also shows that Defendant Werner communicated with Defendant Fezatte after the accident, *id*., Ex. B at 97:22–24, and required him to attend a training as a result of the accident. *Id*. at 27:4–20. And unlike *Ferrellgas*, *Horton*, and *Copper Solutions,* the evidence does not show that Defendant Werner failed to follow its own policies or procedures. Nor does it establish that any acts or omissions by Defendant Werner contributed to the accident. Plaintiff's accusation that Defendant Werner failed to investigate the accident or challenge Defendant Fezatte's testimony is unsupported by the record and irrelevant to the inquiry. Finally, even assuming Defendant Fezatte's conduct was malicious, there is no "cumulative conduct" of any other employees—only the conduct of Defendant Fezatte on the day of the accident.

Simply put, Plaintiff fails to create a fact issue that demonstrates that Defendant Werner had a "cavalier attitude toward safety regulation." Holding otherwise would allow for the imposition of punitive damages against a corporate entity based on a single, isolated, unauthorized, and unexpected act by an employee. The Court will grant Defendant Werner's Motion.

### B. Fezatte Motion

#### 1. Parties' Arguments

Defendant Fezatte argues that the material facts surrounding the November 22, 2013, accident have remained unchanged, irrespective of the Ramay affidavit and deposition. Fezatte Mot. at 7–11. To support this proposition, Defendant Fezatte still relies on his own deposition, the deposition of Officer Chischilly, and the deposition of Detective Rodriguez. *Id*. Additionally, Defendant Fezatte relies on new evidence that stems from the resolution of the intervening criminal case. *Id*. at 9. Defendant believes that this new evidence demonstrates an absence of culpability because during the plea hearing the prosecutor (1) admitted that the State would have evidentiary

13

issues proving the original charges at trial (Great Bodily Harm by Motor Vehicle and Accident Involving Death or Personal Injuries) and (2) failed to object to the factual basis that supported his guilty plea to the lesser charge of Careless Driving. *Id*. Second, Defendant Fezatte maintains that the lesser charge of Careless Driving demonstrates that, at worst, he "did not act with slight care." *Id*. Lastly, Defendant Fezatte argues that, because Detective Rodriguez assessed his testimony as credible during the initial investigation of the November 22, 2013, accident, i.e., that Defendant Fezatte believed that he hit a deer, the Ramay evidence cannot create a fact issue. *Id*. at 11.

Conversely, Plaintiff argues that the Ramay evidence creates a fact issue that precludes summary judgment on punitive damages. Resp. Fezatte Mot. at 19–21. Plaintiff relies on the Ramay affidavit and deposition to demonstrate that Defendant Fazette "deliberately and/or recklessly struck Plaintiff," "provided false testimony—and continues to provide false testimony," and "willfully, wantonly, and recklessly left the scene of the accident." *Id*. at 22–23.

> 2. *There is a genuine issue of material fact regarding Defendant Fezatte's mental state*

Under New Mexico law, negligent conduct alone is insufficient to support a finding of punitive damages. Rather, "[t]o be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious reckless, oppressive, or fraudulent level[.]" *Ferrellgas, Inc.*, 881 P.2d at 14 (internal citations omitted); *see also* NMRA, Civ. UJI 13-1827 (instructing that punitive damages may be awarded against the tortfeasor if that person's conduct "was malicious, willful, reckless, wanton, fraudulent or in bad faith"). The New Mexico Uniform Jury Instruction (UJI) 13-1827 further defines these terms:

> Malicious conduct is the intentional doing of a wrongful act with the knowledge that the act was wrongful. Willful conduct is the intentional doing of an act with the knowledge that harm may result. Reckless conduct is the intentional doing of

an act with utter indifference to the consequences. When there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness. Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's safety.

In the Court's February 14, 2018, Memorandum Order and Opinion it ruled in favor of Defendant Fezatte because Plaintiff failed to "cite[] to any deposition testimony or other evidence to raise an issue regarding whether Defendant Fezatte's conduct was 'malicious, willful, reckless, wanton, fraudulent, or in bad faith.'" Doc. 102 (quoting NMRA, Civ. UJI 13–1827). However, because the punitive damages argument was not adequately addressed by the parties, the Court granted Plaintiff's Motion to Reconsider, which essentially was a mislabeled request to file a surreply. *See* Doc. 124 ("If requested, the Court would have given Plaintiff a chance to file a surreply and address the argument raised in the MSJ Reply brief. Although Plaintiff failed to ask for leave to file a surreply, but instead filed the Motion to Reconsider, the Court will allow Plaintiff a chance to brief the issue.").

Now that the argument is fully developed, it is clear that Plaintiff does proffer sufficient evidence to create a fact issue regarding Defendant Fezatte's culpability. At bottom, Defendant Fezatte believes the Ramay affidavit and testimony cannot create a fact issue because it is inconsistent with the record. For this proposition, Defendant Fezatte again relies on his own deposition, the deposition of Officer Chischilly, the deposition of Detective Rodriguez,[22] and the transcript from the sentencing/plea hearing. Defendant Fezatte believes that this evidence

---

[22] Among other things, Defendant Fezatte argues that Detective Rodriguez testified that Defendant Fezatte did not act intentionally or purposefully. Fezatte Mot. at 8 (citing Doc. 69–7 at 29:17–21 (Rodriguez deposition taken on May 16, 2017)). Interestingly, Detective Rodriguez was also the affiant for the Statement of Probable Cause filed on November 19, 2018, that served as the basis for the criminal complaint, which he filed that same day. *See* Docs. 157–1 (criminal complaint), 4 (statement of probable cause) ("I believe probable cause exists to charge Defendant Seth E. Fezatte with the crimes of great bodily harm by motor vehicle").

establishes (1) that he believed that he hit a deer rather than a person, Mot. at 7 (citing Doc. 157–3 (Ex. 3)), and (2) that he did not do so intentionally or purposefully. *Id.* at 8–9. (citing Ex. 7).

Unfortunately for Defendant Fezatte, it is the inconsistencies created by the Ramay affidavit and testimony that preclude summary judgment. For an award of punitive damages Defendant Fezatte's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level. He proffers evidence that shows that he believed that he hit a deer, therefore he possessed no ill intent. The Ramay affidavit alleges that Defendant Fezatte "saw [Plaintiff] before he hit him, and that he knew he had hit a person." Resp. Fezatte Mot., Ex. 4–A. The Ramay deposition clarifies that Defendant Fezatte "swerved over and hit" Plaintiff and that Defendant Fezatte "told [Ramay] that he'd [sic] done it on purpose." *Id.*, Ex. 4. These allegations create a fact issue on Defendant Fezatte's culpability, i.e., whether he hit Plaintiff with a culpable mental state or whether it was just an accident not rising to a willful, wanton, malicious, reckless, oppressive, or fraudulent level.[23] To finish, Defendant Fezatte's contentions that the Ramay evidence cannot override the credibility findings of Detective Rodriguez and that the criminal matter establishes that Defendant Fezatte acted with an innocent mental state are misplaced. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

## IV.  CONCLUSION

Plaintiff has failed to create a genuine issue of material fact as to Defendant Werner's culpability for punitive damages. Holding otherwise would amount to imposing punitive damages

---

[23] Because the Ramay affidavit and deposition testimony create a fact issue on punitive damages, the Court need not address other implicit arguments made by Plaintiff, including that Defendant Fezatte was culpable because driving a semi-truck is inherently dangerous, that he was driving during inclement weather, or that he fled the scene.

on a corporate entity under a simple respondeat superior theory. New Mexico law requires more. Consequently, Plaintiff's claim for punitive damages against Defendant Werner cannot proceed as a matter of law. But the same is not true for Plaintiff's claim against Defendant Fezatte. The Ramay affidavit and her deposition testimony create a fact dispute as to whether Defendant Fezatte acted willfully, wantonly, maliciously, or recklessly when he hit Plaintiff with his truck. Thus, the Court will deny Defendant Fezatte's Motion.

**IT IS THEREFORE ORDERED THAT** Defendant Werner's PARTIAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM (Doc. 154) is GRANTED and Defendant Fezatte's PARTIAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM (Doc. 157) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE